The last case this afternoon is 412-0933, Brink v. Grunloh. For the appellant is Mr. Legner from the AG's office. Mr. New, is that pronounced correctly? Mr. Legner, you may proceed. Good afternoon, Your Honors. May it please the Court. My name is Brett Legner. I'm an Assistant Illinois Attorney General, and I represent the defendant's appellant in this case. Your Honors, this Court should reverse and vacate the preliminary injunction order entered by the Circuit Court. The principal issue in this case is whether the Circuit Court had subject matter jurisdiction to order the Illinois Department of Transportation to approve the Quincy contract and thus authorize the expenditure of state motor fuel tax funds on that contract. For that is exactly what the Circuit Court's injunctive order did. The Court made clear that it was ordering the Department to approve the Quincy contract. Otherwise, the Secretary of the Department of Transportation would have been held in contempt. And in case there were any doubt that was the intent and the effect of the Court's order in injunctive orders, the discussion in the record at the transcript, R. 1347-1359, makes that abundantly clear. Well, Mr. Legner, let's assume for the moment that the Court was wrong. Yes. Why isn't this matter moot? And if it is moot, why should we concern ourselves with it? The case is moot, but the public interest exception to that mootness doctrine applies. Well, let me put it this way. We're very familiar with the public interest exception because it comes up all the time in the involuntary commitment cases, and we've had a bunch of those. I've been on this Court now finishing up 24 years. I've never seen this issue before. I've never heard of this issue before. I've never seen it raised before. Now, that's personal experiences, but I read other stuff. Again, what's the public interest? Indeed, there's no precedent established. Judge Ortenbaugh doesn't even have to follow his own rulings, much less anyone else in the Adams County Courthouse. So why should we be addressing this now? To what effect? The public interest is affected for a couple reasons, Your Honor. First of all, this involved the expenditure of state funds. State money was spent on this contract. There's a public interest in that. Next, it concerns the Court's subject matter jurisdiction, insofar as we're raising the sovereign immunity issue. Again, that's a threshold and a very important issue about the basic core of the Court's power. Simply acknowledging while maybe there wasn't precedent on this exact issue in the past doesn't change the fact that this goes to fundamental nature of what the Court can and cannot do. Isn't there some concern that this is a matter which might appear again? I mean, isn't that a part of the special interest exception? Absolutely. The public interest? Absolutely, and that gets kind of to the third prong or third element a lot of people describe, or a lot of courts, sorry, describe that as. And there absolutely is a likelihood of recurrence here. First of all, it is not rare, and it is not only once that this has happened, that we've seen disappointed bidders, for instance, for state contracts, go to the Court to try to get the Court to require the state to grant a contract or to give a contract or to contract with them. That has happened. That was part of what was happening in the Brando construction case that we're citing, where a party saw an order and had obtained an order from the Court saying, Court, you have to enter an injunction that says the state has to contract with us and enjoin the state from contracting to the second bidder. That's precisely what the issue was in Brando construction. That's precisely what the Court disallowed under the doctrine of sovereign immunity. Additionally, I know of at least one case that was litigated in the federal court, in the Seventh Circuit, within the last year, dealing with these type of issues and a bidder that had been suspended by the Chief Purchasing Officer or the Chief Procurement Officer going to court to get an injunction saying, Court, tell the state that they have to let us bid on and be awarded contracts. That was a federal case called McDonough. Additionally, the state lets or awards many contracts every year. There's pre-bidder qualification. There are statutory terms regarding it. It is likely, it is only logical to assume that these type of issues are going to arise again in the future. Well, wait a minute. This case is moot because IDOT has issued a final administrative decision, correct? Well, this case is, this preliminary injunction appeal was mooted when, basically when the construction contract was completed. So IDOT was required to approve the contract. It was. Then plaintiff performed the Quincy contract. Yeah. And that was done. So that's all. There was no injunction entered pending the administrative proceeding. But the administrative proceeding did occur. Yes. And there's been a final adjudication. Yes. Can't that be challenged? Yes. And, well, whether the plaintiff has the ability to seek review of that final administrative decision is a matter that's being litigated right now in the circuit court. Why can't these issues be done then? I mean, why should this court do anything other than say moot? There's still litigation. There could be another appeal. And then any issues that remain can be brought in that particular issue. There's authority to the effect that when you fail to take a 307A appeal from an interlocutory injunction, you lose the right to subsequently do that on an appeal from a final order. Well, so if you're here and we decide it's moot, then you can raise it later, couldn't you? If, Your Honor, we're to put that in the order deciding it's moot, that we have the right to raise that in any appeals on that order. Because you haven't forfeited it by taking no action. You did the best you could. It's that arbitrary appellate court that decided you wouldn't proceed, and now you're going to raise it at the trial level and on appeal and such. Your Honor, if that's the way this court goes, then we will raise the issue on appeal from the final order. However, I do believe that this falls within the public interest exception because the state lets so many contracts, the risk of future disappointed bidders or bidders who have their pre-provocation status removed from them coming into court to try to get a court order saying, State, you have to let them perform this contract is very high. And the results, the ramifications of that is that state money then is spent on contracts where there's been some determination that it's not in the public interest to permit this contract from going to this particular bid at this particular point. Turning to the merits of the case. Assuming this court reaches the merits of this case, sovereign immunity bars the specific injunctive relief ordered by the court. First, the State Lawsuit Immunity Act provides that the state shall not be made a party in any court. This has been read to mean that a court lacks jurisdiction to enter a mandatory injunction against the state. That was the issue in Brando Construction. That's what Brando Construction cited down to your statute in saying the court lacked jurisdiction to enter an order requiring the state to contract with a particular party or to enjoin a state from contracting with another party. That's exactly what the court did here. It entered an order requiring the state to approve the contract, the Quincy contract, with the plaintiff. Additionally, the court more specifically lacks jurisdiction to require the state to enter into a contractual relationship with a particular party. Again, this is Brando, and it's also the Court of Claims Act, which reserves to the jurisdiction of the Court of Claims any issues founded upon any contract with the state. Plaintiff here is certainly claiming contract rights that he's seeking to enforce against the state by claiming, I have the Quincy contract, the state, therefore, must approve it and authorize the flow of the state motor fuel tax funds to me. In the same vein... Am I hearing you correct? Are you saying the Court of Claims can grant injunctive relief? Is that what you're saying? I'm not saying that plaintiff would be entitled to injunctive relief in this case. I acknowledge that the Court of Claims itself has in the past held that it cannot grant injunctive relief. At the same time... Well, I think that this case should go to the Court of Claims. That doesn't follow. If the Court of Claims can't grant injunctive relief, and that's what they're requesting, how can it go to the Court of Claims? That doesn't matter. It doesn't? It absolutely does not. The Courts are very clear on the fact that if a matter is barred by sentence, sovereign immunity, the Court of Claims may be the only place for redress, and the fact that a party cannot obtain complete redress is irrelevant. So no remedy. Even if there's a wrong, no remedy. So sometimes, even if there's a wrong, there may not be a complete remedy that would effect the sovereign immunity. What remedy could they get from the Court of Claims? Well, in a hypothetical case, because, again, they got the contract in this case and performed it. In a hypothetical case, if they had an enforceable contractual right against the state, they could seek some sort of monetary remedy. Again, I'm certainly not conceding that they'd be entitled to it, but... And, again, the Illinois Supreme Court's case of Ellis v. Board of Governors, for instance, is one case in which the party sought both monetary and injunctive or equitable relief, and the Illinois Supreme Court held the courts do not have jurisdiction over this matter. The fact that injunctive or non-monetary relief was sought does not keep it in the courts or otherwise contrive to provide subject matter jurisdiction where sovereign immunity would otherwise apply. This is a present claim, moreover, against the state. Throughout its brief, and throughout the briefing in this case, plaintiff has maintained that it has a right right now that it seeks to vindicate against the state. That makes it a present claim, much like the claim in the State Building Venture case, the Illinois Supreme Court in the State Building Venture, where the court held that the plaintiff's already accrued right meant that it sought to vindicate a present claim, and present claims are barred by sovereign immunity. This did not fall within the exception of sovereign immunity concerning possible prospective relief only. This is also consistent with the Hudgens v. Dean case that we cite and discuss in the reply brief that held that where court action affects the state coffers or otherwise affects the actions of the state, it is barred by sovereign immunity. And in particular, the relief sought in that case was either an injunction requiring the state to repair a road or requiring the state to pay for the repair of a road. And the court held no, sovereign immunity bars that type of claim. Here, plaintiff seeks an order paying them to do road work, to repair a road. And just as in Hudgens, that would be barred by sovereign immunity. Moreover, under the Children's Memorial Hospital case there, the appellant's side, in that case, the party sought to impose an obligation to pay money on a department of the state government. Here, the plaintiff sought an obligation, sought to impose an obligation on the Department of Transportation to pay motor fuel tax funds to them by requiring the state to approve the Quincy contract. Just as that relief was disallowed under the doctrine of sovereign immunity in Children's Memorial Hospital, so should it be here. Finally, the court's order requiring the department to exercise its discretion and approve the Quincy contract violated sovereign immunity because the court is not permitted to order the state to exercise its discretion in a particular matter. Indeed, the highway code provides that the department shall approve a motor fuel tax fund contract before it is let. It does not impose any parameters on the exercise of that discretion. In the end, very strong policy issues are at play here. The PolyVent and Lukens cases provide that the government needs to preserve the right to choose with whom it's going to enter into contractual relationships with. A court ordering the Department of Transportation to approve the letting of a particular contract goes to this core government right and this core government obligation. Similarly, if this court finds that there is jurisdiction, the plaintiff was not entitled to injunctive leave for the final reason that it had no protectable interest in this particular contract because a plaintiff has no right to any particular contract with the state. Again, PolyVent, the Illinois Supreme Court holds that as well as the Lukens case. This is not a case about a protectable interest in pre-bidder qualification, which is what was under the interim suspension that was stayed for a while by the court. Because pre-bidder qualification itself does not give any party a right to win a contract. Simply being pre-qualified to bid does not mean that you have the right to be awarded contract A or contract B or contract C. And Justice Clark's special concurrence on PolyVent makes that abundantly clear. For these reasons, Your Honors, this court should reach this case under the public interest exception to the Lukens Doctrine and should hold that the court lacked subject matter jurisdiction to enter the injunctive leave requiring the department to approve the Quincy contract. If this court has no other questions, then I ask that you reverse the record. Thank you very much. Thank you, Counsel. Mr. New? May it please the court. Counsel? I'm Stanley New and I'm representing R.L. Brink. And I'd like the court to first examine what Counsel said is an order requiring IDOT to sign something. The history is really important. The TRO was issued and the TRO simply says to refrain from enforcing the suspension. Brink subsequently brought two rules to show cause. And after the second rule to show cause, the court said that the Secretary of the Department of Transportation violated the prior two court orders by sending out the letters that it did that are in the record. And that's from C-205 to 228. What the court did in the order that Counsel is referring to is the court said that the Secretary of the Department of Transportation could purge itself of the contempt by signing the contract. But then the court has to examine what does that mean. Counsel mentioned the applicability of the Illinois Highway Code. And I asked this court to look at several provisions of that code. In particular, Section 72.203. And what it provides, it's really important, that the municipality, here at Quincy, shall pass an ordinance how the taxes will be used. When the ordinance is passed, it goes to IDOT. IDOT approves the spending of the money at that stage. Then IDOT gives approval of the plans and specifications which are submitted by the City of Quincy. And again, these plans and specifications were approved. The next thing that occurred, pursuant to the statute, they advertised for bids. My client was the low bidder and was awarded the contract by the City of Quincy. It's a contract between Quincy and R.L. Brink. What was there left then for IDOT to do? I suggest to the court it was just sign off on everything that they already approved. It was a ministerial act at best. That's all it was. In retrospect, I probably should have brought a writ of mandamus as part of it. Secondly, as to sovereign immunity, I think the court only needs to look at three cases. In the response brief, the biomedical versus trainer case. I'd like to quote from page 648 at the Illinois site. It says, Plaintiff is not attempting to enforce the present claim against the state, but rather seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of the plaintiff's protectable interests. Such a suit does not contravene immunity prohibition. What did the state do here that needed to be enjoined that was otherwise going to stop your client from thinking on the Quincy contract? They suspended my client. By the way, there was a suspension without a hearing, which is permitted by the administrative rules, but it was still without a hearing. Suspended him from being on the list of eligible bidders? Did two things. Suspended him from bidding on all jobs, and suspended the prequalification, which my client had for 34 years. Why isn't that a matter addressed at the discretion of the Secretary of Education? Because the way the rules were applied and the way the statute was written, it violated the constitutional due process rights of my client. Number one, the Illinois Procurement Code does not apply to city contracts. So by applying it to a city contract, they exceeded their authority. Number two, they violated the Administrative Procedure Act by enacting rules without publication. They exceeded their authority by expanding what the Illinois Procurement Code said as what is needed. The Illinois Procurement Code says that the successful bidder must certify that they will have USDOL certified apprentice programs for all applicable work. Again, applicable is not defined. And what IDOT did is they added what is called a Section K certification. And that certification goes way beyond the statute. And it says that not only must you certify that you have USDOL certified programs, you must certify for every single craft that you're planning on using or your subcontractors are planning on using. And that goes beyond the statute. And it falls right into the case that the defendants were exceeding their authority. Other grounds... Was this an administrative regulation that they issued? No, that's the problem. They just inserted it in the contract. And that violates the Administrative Procedure Act. And it doesn't fall within the contract exception. You said this is a constitutional violation? Absolutely. Why? A due process violation. How is it due process? I don't understand. It might be erroneous or it might exceed their authority, but what makes it a violation of due process? Well, if an administrative agency or an officer goes beyond its authority, that is a constitutional due process violation because the rights of due process means I must know what I'm to expect. They just can't willy-nilly go out and make regulations without telling us and letting us object under the Administrative Procedure Act. So the Administrative Procedure Act provided no opportunity to object. It's unconstitutional? I don't know the answer to that. I just think you're misusing the term, counsel. I doubt seriously that this is a constitutional violation. It might be one statutory. Go ahead. Mr. New, what about the mootness argument? Your Honor, every single order of the court, the three orders I just mentioned and two subsequent orders are all moot because, number one, the contract was issued. Number two, the judge's order which dissolved most of the preliminary injunction except for the one Quincy contract, that's gone because the administrative hearing took place. Not only did the administrative hearing take place, the Chief Procurement Officer adopted the findings of the hearing officer. And most important is the court two weeks ago today, I believe, held arguments on the writ of certiorari on the issues that I presented from the court. And the court, Judge Orthball, took that under advisement. Didn't you prevail at the administrative hearing? I did not. Oh, you did not. Okay. Well, just out of curiosity, you've argued it's moot. How does that benefit your client for this court to find that it's moot? I guess I don't follow that. Well, if there's moot, there shouldn't be an appeal at this stage. The way I look at it, we should wait until – But do you have anything – does your client have anything to gain? I guess I'm asking to make sure I understand. I'm trying to understand why your position is that the case is moot, contrary to what opposing counsel argues. Well, because of possible relief that this panel could give. Well, what relief could the panel give? If we can give relief and it's not moot, is it? Well, I – It's probably just me. I just don't quite follow that. Well, I think maybe that if we ruled in a certain way, that kind of ends your appeal on the administrative review. Yes or no? That's correct. Oh, okay. Well, then that makes sense. Thanks, Justice. Thank you, Justice. Well, on this question, you heard Mr. Legner's argument, and it sounds like, for lack of a better way to put it, you are unrepentant in having sought and achieved this injunction at the trial level, and it sounds like you're ready to do it again. And maybe there are other experienced counsel like you, Mr. New, around the state who will be ready to sue if IDOT is not handling contracts to the liking of their clients. Well, again, if it may please the panel and the court, this is such a narrow issue as to what took place. How many times are we going to have a contract which has been awarded, everything's ready to go, other than the ministerial sign-off? The case, the McDonough case that I'm familiar with, the facts were different in McDonough. In McDonough, there was a suspension without a hearing, and I believe Judge Shader handled that case. They sought a preliminary injunction to keep the suspension from being in place. Not this narrow issue that we have here. You've used the term I think at least twice now about the ministerial sign-off. What makes it ministerial? That is, if the department is supposed to be approving the contract between the city and builders, contractors who are going to be doing some street work or whatever, as in this case, what do the statutes say about what they're supposed to do and why they're supposed to do it? I don't believe the statute says anything, but remember what I said before to the court. Everything was gone, done, other than signing the one piece of paper. They've already executed other documents approving every single stage. It is like, by way of example, I go and apply for a building permit. I go through every single step, and for some reason the municipality is sitting on their hands. I believe that if I were representing that client, a mandamus action would be appropriate to require the city to issue that license because there's no impediment to issue that license. In our case, again, there is no impediment. Well, but the city could say, well, we've looked this over, and we don't think, using your scenario, we don't think the plans are in accordance with what we require. It's not in accordance with the electrical requirements of the city code. Ah, I would agree with that. But what the IDOT did and the secretary did, which would cause those two rule of show causes, is they wrote pretextual letters to my client saying, we're reviving protests that we, two years ago, had abandoned. And since we're reviving the protests, we can't go forward on anything. But there's no rule anywhere, again, under the Administrative Procedure Act that was passed under the Administrative Procedure Act which permitted them to do that. And Judge Ortbal correctly ruled and felt that they were impeding on letting that contract go and violating the terms of the TRO. The second TRO was specific. It said, we'll not interfere with the TRO either directly or indirectly. And the court's finding in the order where the secretary could purge herself of the civil contempt was to have that contract brought over inside. They're playing games, that's all it was. There was no... Well, Mr. Legner's point is, you shouldn't be, this is not something that's justiciable. You shouldn't be able to be enjoining the state from doing whatever. Sounds like you're ready to do it again. Isn't that a basis upon which we should entertain this argument and see if he's right on the merits? I don't think such an issue is going to arise in many moons. On that narrow issue, it's just not going to happen. Look, the appeal was taken October 1st, if I recall. It was four and a half months or five months since the defendant's brief was filed. Nothing happened in the interim. How many contracts did I got awarded in that time? If you look at their letting list, there's so many of them. In each letting, there's 30, 40, sometimes 150 contracts. And it's not happening. The likelihood, I respectfully submit, is very, very slim. So this was an unusual situation up there in Adams County? I believe it was. I lost track of my time, how much I have left. Well, until the light goes on, you're okay. And then when the orange light goes on, you'll have two minutes. Again, I'd like to point the court to the case of Illinois Healthcare Associates versus Walters. And it's a good example. What that case did is a Medicare patient sued that the reimbursement rates were inadequate. This is a perfect example of what is a case against the state as opposed to a case for relief where someone exceeded their authority. That court said that belongs in the court of claims. That court distinguished that it's also not critical for the parties to get an answer because it's not likely to happen. And the court said that if the suit alleges an officer exceeded authority or violated constitution, immunity does not apply. And I suggest to the court that sovereign immunity simply is not at play here. That concludes my argument. Okay. Thank you, counsel. Mr. Leitner? Thank you, Your Honors. A couple of brief points. Okay. First, with regard to whether this is an unusual situation, the answer is no, it's not. There are many motor fuel tax cases. This issue could certainly arise in any of them. Additionally, the issue of whether the court can order the state to enter into a contract with any particular bidder is presented not just in the motor fuel tax cases such as this, but also any time the department or the chief procurement officer or otherwise the state is letting a contractor What about the distinction Mr. Newdrew here made? Namely, this isn't a question of the state being the bidding partner or being the person in the contract. Instead, it's the city of Quincy and the state is performing this ministerial function just confirming that this successful bidder, R.L. Brink Corporation, should be permitted to proceed. And the state arbitrarily, he claims, said no, no, you can't because of this stuff that was added. They had no right to add stuff. You heard all that. But in fact, isn't he right that this is not a case where the court ordered the state to sign a contract with someone? This is a case where the court ordered the state to execute a contract. And that's on page R1356 of the record. How does that work? The state wasn't in a contractual relationship with R.L. Brink. It was the city of Quincy. The city of Quincy had a contractual relationship. That is true. But to assume that the state had no contractual relationship relies on Mr. New's argument that 7-203 of the highway code only permits a ministerial act instead of some sort of substantive discretionary action. I can understand if it requires the state to make sure this person is an appropriate bidder. But that still doesn't make him a contractual party. They're reviewing him and say, yeah, he's someone you can bid with, city of Quincy. Isn't that essentially the issue? No. The issue is whether, he's someone to whom we will let you use state funds in a contract with. Yes. Okay, essentially saying to the city of Quincy, city of Quincy, you can contract with Brink and use some state funds that we will be giving you in the process of paying. Right. Okay. That doesn't make him a contractual party. It makes him approving the people the city may contract with. There's no, once the contract has been entered by the city, the contract cannot be let. The contract cannot be let until the department approves it. And the department doesn't approve it until the city presents it and says, this is who we're contracting with. You have to approve it. The contract is ineffective until that time. There is no effective, enforceable, workable contract. Until the department approves it, there's no contractual relationship that has any meaning or that anything will get done under this motor fuel tax construction project. And the department's obligations throughout 7-203 of the Highway Code requires the department to approve plans, approve budgets, approve drawings. But it also requires the department to approve the letting of the contract. It's that separate burden that Mr. New tries to read out of, or separate obligation. Approve the what, did you say? The letting of the contract. No contract shall be let without approval of the department. There can be no motor fuel tax case, fund case, unless the department approves it, or contract unless the department approves it. The contract does not exist, is not effective or effectual. And if this were truly a ministerial act, then the department simply checking off and saying okay to the plans for the project and the proposed budget for the project wouldn't be enough. The General Assembly wouldn't have needed to add this. But they did. You heard what Mr. New said about ongoing litigation involving this matter. Apparently he's lost an administrative review and he's now pursuing the matter at the trial level with certiorari. My guess is whoever loses there would likely be taking an appeal to us. If that's the case, and if we were to decide that this case at the moment is moot, would we be able to address all of the substantive issues that you and Mr. New have been talking about in that later appeal? Well, again, the concern here, Your Honor, is that by not pursuing the 307A appeal, we would be forfeiting that. Of course, you've done all you can. It's a question about whether it would be properly before us. And depending on this court's order from this interlocutory appeal, let's assume we say, no, we're going to hear it now, it's moot, and the public interest exception doesn't apply. Is there any reason why down the road whoever loses, I suspect you wouldn't be happy to be losing at the certiorari stage either. Mr. New suggests he wouldn't either. My guess is the loser is going to be taking an appeal from that decision. That's a fair assumption. Would we then have before us the substance of the arguments you and he made to address? Could we do that at that time? I would hope so, but because I'm not convinced so, that's why we believe it's important that we prosecute and reach the merits. Well, surely it can't be, if you were to lose and want to appeal, it can't be that you abandon your appeal because here you are, and it's not your fault that the appellate court was obstructionist. At the same time, if we prevail on the final administrative decision, and so we are ultimately the winners in the case, I'm not sure that we'd be able to appeal this interlocutory injunctive order. If you won at that stage and missed a new appeal, would we be able to go beyond just the fact that you won and not only did you win, but the case shouldn't have even proceeded that far? That is an interesting jurisdictional question, Your Honor, and one in which caused us to pursue and continue to pursue this interlocutory appeal because we're not certain of the answer to that, so we want to preserve our rights. Thank you very much. Thank you, counsel. Thank you, Mr. President. Good-bye.